IN THE COURT OF APPEALS OF NORTH CAROLINA

 2022-NCCOA-265

 No. COA16-631

 Filed 19 April 2022

 Robeson County, No. 12CRS2856, 57284, 708246

 STATE OF NORTH CAROLINA

 v.

 ROCKY KURT WILLIAMSON, Defendant.

 Appeal by Defendant from judgment entered 8 October 2015 by Judge Tanya

 T. Wallace and order entered 14 May 2020 by Judge Robert F. Floyd, Jr., in Robeson

 County Superior Court. Heard in the Court of Appeals 15 December 2021.

 Attorney General Joshua H. Stein, by Assistant Attorney General Kathryne E.
 Hathcock, for the State.

 Glover & Petersen, P.A., by James R. Glover, for Defendant-Appellant.

 INMAN, Judge.

¶1 Defendant Rocky Kurt Williamson (“Defendant”) appeals from a judgment

 following a jury verdict finding him guilty of second-degree murder and aggravated

 felony death by vehicle. On appeal, Defendant contends that the evidence presented

 was insufficient to permit a reasonable juror to find beyond a reasonable doubt that

 Defendant engaged in the reckless conduct required to establish malice for a

 conviction of second-degree murder. By petition for writ of certiorari, which this
 STATE V. WILLIAMSON

 2022-NCCOA-265

 Opinion of the Court

 Court granted, Defendant also argues the trial court erred in denying his motion for

 appropriate relief by striking a witness’s testimony in full without first issuing a

 material witness order compelling the witness to appear for further questioning and

 without informing the witness that he had waived his testimonial privilege against

 self-incrimination and was required to answer further questions on the subject of his

 direct testimony under penalty of contempt. After careful review, we hold

 Defendant’s trial was free from error and affirm the trial court’s order denying

 Defendant’s motion for appropriate relief.

 I. FACTUAL & PROCEDURAL HISTORY

¶2 Evidence presented at trial tends to show the following:

¶3 On 4 July 2012, Defendant, Fred Jacobs (“Mr. Jacobs”), and Dakota

 Hammonds (“Mr. Hammonds”), Mr. Jacobs’ fifteen-year-old relative, were out driving

 late at night. Defendant and Mr. Jacobs were in the front seat and Mr. Hammonds

 was in the back seat. Both Defendant and Mr. Jacobs had been drinking throughout

 the night, at Fourth of July celebrations earlier in the evening and from a twelve-

 pack of beer they purchased while they drove. Around 3:30 a.m. the group visited

 Charles Anthony Carr (“Mr. Carr”) at his house. Defendant got out of the car and

 spoke with Mr. Carr for a few minutes before the group left and began driving again.

 At about 4:00 a.m., the car veered off the road and crashed. Mr. Jacobs was the only

 one wearing a seatbelt; Defendant and Mr. Hammonds were flung from the car in the
 STATE V. WILLIAMSON

 2022-NCCOA-265

 Opinion of the Court

 crash and seriously injured. Mr. Hammonds was airlifted to the hospital, where he

 was declared dead later that morning.

¶4 Defendant was indicted for six offenses on 5 July 2012: (1) second-degree

 murder; (2) aggravated felony death by vehicle; (3) felony death by vehicle; (4)

 reckless driving; (5) driving while impaired (“DWI”); and (6) operating a motor vehicle

 while not having a driver’s license. The case came on for trial 21 September 2015.

¶5 The central issue at trial was the identity of the driver of the vehicle at the

 time of the fatal wreck. Mr. Jacobs testified Defendant was driving. Defendant

 testified that Mr. Jacobs was driving and that he did not remember the crash. Mr.

 Carr served as the only other witness and testified that he saw Mr. Jacobs in the

 passenger seat and Mr. Hammonds in the backseat when Defendant came to speak

 with him in front of his house that night.

¶6 On 8 October 2015, the jury found Defendant guilty of second-degree murder,

 aggravated felony death by vehicle, DWI, reckless driving, and operating a motor

 vehicle without a valid operator’s license. The trial court consolidated Defendant’s

 second-degree murder and aggravated felony death by vehicle convictions into one

 judgment and sentenced Defendant to 180 to 228 months in prison. The trial court

 arrested judgment on Defendant’s other charges. Defendant filed written notice of

 appeal.
 STATE V. WILLIAMSON

 2022-NCCOA-265

 Opinion of the Court

¶7 With his appeal, Defendant also filed a motion for appropriate relief alleging

 that Mr. Carr had recanted his trial testimony as false. We granted Defendant’s

 motion, vacated his convictions based on the motion, and ordered a new trial. As a

 result, we did not resolve Defendant’s original appeal.

¶8 Our Supreme Court then reviewed and vacated the order of this Court,

 concluding the matter should be remanded to the trial court for an evidentiary

 hearing. We then remanded the motion to the trial court for that purpose.

¶9 The trial court conducted an evidentiary hearing on Defendant’s motion for

 appropriate relief in three sessions over more than a year’s time, on 7 June 2018, 7

 February 2019, and 29 October 2019.

¶ 10 On 7 June 2018, Mr. Carr appeared and voluntarily testified that at

 Defendant’s trial, he had falsely testified that: (1) he saw Mr. Jacobs and Mr.

 Hammonds on 5 July 2012; (2) he saw Mr. Jacobs sitting in the passenger side of the

 vehicle; and (3) he saw Mr. Hammonds sitting in the back seat on the driver’s side.

 The trial court then advised Mr. Carr he was potentially facing criminal and contempt

 charges for perjury. After it became clear that Mr. Carr had not consulted with an

 attorney, the trial judge adjourned the hearing to allow Mr. Carr to obtain

 representation.

¶ 11 On 7 February 2019, Mr. Carr again appeared but invoked the Fifth

 Amendment to refuse to testify in response to virtually all of the trial prosecutor’s
 STATE V. WILLIAMSON

 2022-NCCOA-265

 Opinion of the Court

 questions on cross-examination. The prosecutor objected to Mr. Carr asserting his

 privilege against self-incrimination after he testified on direct examination, so the

 trial court again adjourned the hearing to determine whether Mr. Carr had waived

 his right to assert his privilege.

¶ 12 On 29 October 2019, Mr. Carr did not appear. The trial court held that he had

 waived his privilege against self-incrimination by testifying on direct examination at

 the first hearing and struck his testimony in full because he had not appeared in court

 to answer questions on cross-examination.

¶ 13 On 14 May 2020, the trial court entered an order denying Defendant’s motion

 for appropriate relief. Defendant filed a petition for writ of certiorari requesting our

 review of the order denying the motion for appropriate relief along with a motion to

 reinstate his original appeal. This Court ordered Defendant’s appeal reinstated and

 granted his petition.

 II. ANALYSIS

 A. Merits of Defendant’s Original Appeal

¶ 14 Defendant asserts the trial court erred by failing to dismiss the charge of

 second-degree murder when Defendant moved to dismiss all charges at the close of

 all evidence at trial. Specifically, Defendant contends that the evidence, considered

 in the light most favorable to the State, was only sufficient to establish culpable

 negligence for a conviction of involuntary manslaughter and was insufficient to
 STATE V. WILLIAMSON

 2022-NCCOA-265

 Opinion of the Court

 establish malice, which is an essential element of second-degree murder. We

 disagree.

¶ 15 Our standard of review on appeal is well-established:

 Upon the defendant’s motion to dismiss, the question for
 the court is whether substantial evidence was introduced
 of each element of the offense charged and that the
 defendant was the perpetrator. Substantial evidence is
 such relevant evidence as a reasonable mind might accept
 as adequate to support a conclusion . . . . The court is to
 consider the evidence in the light most favorable to the
 State in ruling on a motion to dismiss. The State is entitled
 to every reasonable intendment and inference to be drawn
 from the evidence; contradictions and discrepancies do not
 warrant dismissal—they are for the jury to resolve.

 State v. Alston, 310 N.C. 399, 404, 312 S.E.2d 470, 473 (1984) (quotation marks and

 citation omitted).

¶ 16 Involuntary manslaughter is the “unlawful and unintentional killing of

 another human being, without malice, which proximately results from . . . an act or

 omission constituting culpable negligence.” State v. Wallace, 309 N.C. 141, 145, 305

 S.E.2d 548, 551 (1983) (emphasis added). Second-degree murder, on the other hand,

 is “(1) the unlawful killing, (2) of another human being, (3) with malice, but (4)

 without premeditation and deliberation.” State v. Banks, 191 N.C. App. 743, 751, 664

 S.E.2d 355, 361 (2008) (emphasis added). To prove malice for second-degree murder,

 by reckless driving, in particular, the State does not need to demonstrate Defendant

 had a specific intent to kill, but it must show “that [the] defendant had the intent to
 STATE V. WILLIAMSON

 2022-NCCOA-265

 Opinion of the Court

 perform the act of driving in such a reckless manner as reflects knowledge that injury

 or death would likely result, thus evidencing depravity of mind.” State v. Miller, 142

 N.C. App. 435, 441, 543 S.E.2d 201, 205 (2001) (citation omitted).

¶ 17 This Court has recognized that evidence of knowingly driving while impaired,

 whether by alcohol or an illegal substance––particularly when combined with

 evidence of reckless driving or behavior––may constitute sufficient evidence to prove

 malice for a second-degree murder charge. See, e.g., State v. Grooms, 230 N.C. App.

 56, 67-68, 748 S.E.2d 162, 169-70 (2013) (holding substantial evidence of malice when

 the defendant knowingly consumed multiple impairing substances, swerved off the

 road prior to the collision, failed to brake, failed to call 911, did not aid the two victims

 he struck, and registered a 0.16 BAC at the time of the accident); State v. Davis, 197

 N.C. App. 738, 743, 678 S.E.2d 385, 389 (2009), aff’d in part, rev’d in part, 364 N.C.

 297, 698 S.E.2d 65 (2010) (holding sufficient evidence of malice where the defendant

 consumed nine to twelve beers in a two-hour period, ran over a road sign, weaved side

 to side until he ran off the road, crashed into the victim’s truck without attempting

 to brake, and registered a 0.13 BAC).

¶ 18 Evidence introduced at trial, especially testimony by Mr. Jones, established

 that Defendant drove after consuming alcohol and while he consumed alcohol over

 the course of several hours and that he was impaired. At one point while driving,

 Defendant engaged the emergency break, locking the back tires and causing the car
 STATE V. WILLIAMSON

 2022-NCCOA-265

 Opinion of the Court

 to swerve. Defendant was driving at the time the vehicle veered off the road and

 crashed. Before the crash, Defendant fell asleep at the wheel as the car approached

 a bend in the road, drifted off the curve, suddenly woke, overcorrected, and crashed

 the vehicle.

¶ 19 Defendant’s blood-alcohol level was 0.16 when police tested him after the

 crash, and an expert witness testified that based on the time lapse before testing, it

 could have been as high as 0.20 at the time of the crash. Similar to the defendants

 in State v. Grooms, 230 N.C. App. 56, 748 S.E.2d 162 (2013), and State v. Davis, 197

 N.C. App. 738, 678 S.E.2d 385 (2009), Defendant knowingly consumed alcohol before

 and while driving beyond the point of impairment, drove recklessly, and had

 knowledge of the potentially fatal consequences of his driving, particularly in light of

 his history of impaired driving convictions.

¶ 20 Viewing the evidence in the light most favorable to the State, we hold the State

 presented substantial evidence of Defendant’s malice, his “intent to perform the act

 of driving in such a reckless manner as reflect[ed] knowledge that injury or death

 would likely result,” Miller, 142 N.C. App. at 441, 543 S.E.2d at 205, and the charge

 of second-degree murder was appropriately submitted to the jury for its

 consideration. We hold the trial court did not err in denying Defendant’s motion to

 dismiss this charge.

 B. Order Denying Defendant’s Motion for Appropriate Relief
 STATE V. WILLIAMSON

 2022-NCCOA-265

 Opinion of the Court

¶ 21 Defendant claims that the trial court erred in denying Defendant’s motion for

 appropriate relief because it struck a witness’s testimony in whole without first

 issuing a material witness order compelling the witness to appear. This argument is

 without merit.

¶ 22 Defendant contends that this appeal is subject to de novo review, while the

 State argues abuse of discretion is the proper standard. The State is correct that, as

 a general matter, a denial of a motion for appropriate relief is subject to review for

 abuse of discretion. State v. Watson, 258 N.C. App. 347, 353-54, 812 S.E.2d 392, 397

 (2018) (citing State v. Elliot, 360 N.C. 400, 419, 628 S.E.2d 735, 748 (2006)). However,

 we review the trial court’s conclusions of law in an order denying a motion for

 appropriate relief de novo. Id. (citing State v. Martin, 244 N.C. App. 727, 734, 781

 S.E.2d 339, 344 (2016)). If the issue raised by a defendant’s challenge to the trial

 court’s decision to deny his post-conviction motion is primarily legal rather than

 factual in nature, this Court uses a de novo standard of review in evaluating a

 defendant’s challenge to the trial court’s order. Id.

¶ 23 At an evidentiary hearing, the defendant “bears the burden of proving by a

 preponderance of the evidence every fact essential to support the motion.” State v.

 Garner, 136 N.C. App. 1, 13, 523 S.E.2d 689, 698 (1990). The trial court may grant a

 defendant a new trial on the basis of recanted testimony if: “(1) the trial court is

 reasonably well satisfied that the testimony given by a material witness is false, and
 STATE V. WILLIAMSON

 2022-NCCOA-265

 Opinion of the Court

 (2) there is a reasonable possibility that, had the false testimony not been admitted,

 a different result would have been reached at the trial.” State v. Britt, 320 N.C. 705,

 715, 360 S.E.2d 660, 665 (1987), superseded by statute on other grounds as stated in

 State v. Defoe, 364 N.C. 29, 33, 691 S.E.2d 1, 4 (2010).

¶ 24 The Fifth Amendment of the United States Constitution and Article I, Section

 23 of the North Carolina Constitution provide that a witness cannot be compelled to

 give self-incriminating evidence. U.S. Const. amend. V; N.C. Const., art. I, § 23. The

 Sixth Amendment of the United States Constitution and Article I, Section 23 of the

 North Carolina Constitution provide that a criminal defendant has the right to

 confront witnesses against him, which includes the right to test the truth of those

 witnesses’ testimony by cross-examination. U.S. Const. amend. VI; N.C. Const., art.

 I, § 23; see also State v. Ray, 336 N.C. 463, 468, 444 S.E.2d 918, 922 (1994). When

 these rights conflict, “[t]he issue thus becomes whether [the] defendant’s right to

 confront witnesses through cross-examination was unreasonably limited by [the

 witness’s] assertion of the testimonial privilege.” Ray, 336 N.C. at 469, 444 S.E.2d at

 922.

¶ 25 In State v. Ray, 336 N.C. 463, 444 S.E.2d 918 (1994), our Supreme Court

 distinguished between cases where the “assertion of the privilege merely precludes

 inquiry into collateral matters which bear only on the credibility of the witness and

 those cases in which the assertion of the privilege prevents inquiry into matters about
 STATE V. WILLIAMSON

 2022-NCCOA-265

 Opinion of the Court

 which the witness testified on direct examination.” Id. at 470, 444 S.E.2d at 923

 (quoting United States v. Cardillo, 316 F.2d 606, 611 (2d Cir. 1963)). If the witness

 invokes the privilege in response to questions regarding collateral matters, there is

 little danger of prejudice to a defendant, but if the questions pertain to details of the

 direct examination, there may be a substantial danger of prejudice when a defendant

 is unable to confront the witness. Id. In the latter instance, “the witness’s testimony

 should be stricken in whole or in part.” Id. In other words, the essential question is

 “whether [the] defendant’s inability to make the inquiry created a substantial danger

 of prejudice by depriving him of the ability to test the truth of the witness’ direct

 testimony.” Id. at 471, 444 S.E.2d at 924.

¶ 26 When the assertion of the privilege prevents inquiry into matters about which

 the witness testified on direct examination, to alleviate the substantial danger of

 prejudice, the trial court must either require the witness to answer the questions, or

 strike all or part of the witness’s direct testimony after allowing the assertion of the

 testimonial privilege. Id. at 472, 444 S.E.2d at 924.

¶ 27 Defendant argues the trial court was not authorized to either compel the

 witness to answer questions or to strike the testimony after allowing the assertion of

 the privilege. Instead, Defendant contends, the trial court was required to first

 compel the witness to testify on cross-examination and only then, if the witness

 continued to refuse to answer questions, could the trial court strike the prior
 STATE V. WILLIAMSON

 2022-NCCOA-265

 Opinion of the Court

 testimony. The trial court did not compel Mr. Carr to testify, and Mr. Carr never

 returned to hearings to learn he had waived his privilege.

¶ 28 The trial court determined that Mr. Carr was a material witness at

 Defendant’s trial. Mr. Carr voluntarily testified that his trial testimony was false

 without asserting his Fifth Amendment privilege. After it became clear Mr. Carr had

 not consulted with an attorney regarding this testimony, the trial court set a second

 hearing date to allow Mr. Carr to seek counsel. At the second hearing, Mr. Carr

 asserted his Fifth Amendment privilege on cross-examination. Mr. Carr failed to

 return to testify for the third hearing date. The trial court then found that Mr. Carr

 had waived his privilege by testifying during the first hearing and that his failure to

 reappear and undergo cross-examination substantially prejudiced the State’s ability

 to present evidence and testimony in support of its position against Defendant’s

 motion. The trial court struck Mr. Carr’s testimony that his trial testimony was false

 in its entirety.

¶ 29 We are bound by our Supreme Court’s decision in Ray, which held that the

 trial court should either require the witness to answer the questions, or strike all or

 part of the witness’s direct testimony after allowing the assertion of the testimonial

 privilege. Ray, 336 N.C. at 472, 444 S.E.2d at 924.

¶ 30 “[W]hether all or a part of the testimony should be stricken, must depend upon

 the discretion of the trial judge exercised in the light of the particular circumstances.”
 STATE V. WILLIAMSON

 2022-NCCOA-265

 Opinion of the Court

 Cardillo, 316 F.2d at 613. Defendant has not suggested the trial court should have

 only partially stricken Mr. Carr’s testimony or challenged the trial court’s exercise of

 its discretion in this regard, so he has abandoned that argument. See N.C. R. App.

 P. 28(a) (2022) (“The scope of review on appeal is limited to issues so presented in the

 several briefs. Issues not presented and discussed in a party’s brief are deemed

 abandoned.”).

¶ 31 Other than Mr. Carr’s testimony, Defendant presented no evidence to support

 his motion for appropriate relief. Because Defendant failed to meet his burden of

 proof, Garner, 136 N.C. App. at 13, 523 S.E.2d at 698, we hold the trial court properly

 denied his motion for appropriate relief and affirm the trial court’s order.

 III. CONCLUSION

¶ 32 For the reasons set forth above, we hold Defendant’s trial was free from error,

 and we affirm the trial court’s denial of Defendant’s motion for appropriate relief.

 NO ERROR; AFFIRMED.

 Judges ARROWOOD and HAMPSON concur.