IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-265

No. COA16-631

Filed 19 April 2022

Robeson County, No. 12CRS2856, 57284, 708246

STATE OF NORTH CAROLINA

v.

ROCKY KURT WILLIAMSON, Defendant.

Appeal by Defendant from judgment entered 8 October 2015 by Judge Tanya T. Wallace and order entered 14 May 2020 by Judge Robert F. Floyd, Jr., in Robeson County Superior Court. Heard in the Court of Appeals 15 December 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General Kathryne E. Hathcock, for the State.*

*Glover & Petersen, P.A., by James R. Glover, for Defendant-Appellant.*

INMAN, Judge.

¶ 1     Defendant Rocky Kurt Williamson ("Defendant") appeals from a judgment following a jury verdict finding him guilty of second-degree murder and aggravated felony death by vehicle. On appeal, Defendant contends that the evidence presented was insufficient to permit a reasonable juror to find beyond a reasonable doubt that Defendant engaged in the reckless conduct required to establish malice for a conviction of second-degree murder. By petition for writ of certiorari, which this

Court granted, Defendant also argues the trial court erred in denying his motion for appropriate relief by striking a witness's testimony in full without first issuing a material witness order compelling the witness to appear for further questioning and without informing the witness that he had waived his testimonial privilege against self-incrimination and was required to answer further questions on the subject of his direct testimony under penalty of contempt. After careful review, we hold Defendant's trial was free from error and affirm the trial court's order denying Defendant's motion for appropriate relief.

## I. FACTUAL & PROCEDURAL HISTORY

¶ 2  Evidence presented at trial tends to show the following:

¶ 3  On 4 July 2012, Defendant, Fred Jacobs ("Mr. Jacobs"), and Dakota Hammonds ("Mr. Hammonds"), Mr. Jacobs' fifteen-year-old relative, were out driving late at night. Defendant and Mr. Jacobs were in the front seat and Mr. Hammonds was in the back seat. Both Defendant and Mr. Jacobs had been drinking throughout the night, at Fourth of July celebrations earlier in the evening and from a twelve-pack of beer they purchased while they drove. Around 3:30 a.m. the group visited Charles Anthony Carr ("Mr. Carr") at his house. Defendant got out of the car and spoke with Mr. Carr for a few minutes before the group left and began driving again. At about 4:00 a.m., the car veered off the road and crashed. Mr. Jacobs was the only one wearing a seatbelt; Defendant and Mr. Hammonds were flung from the car in the

crash and seriously injured. Mr. Hammonds was airlifted to the hospital, where he was declared dead later that morning.

¶ 4        Defendant was indicted for six offenses on 5 July 2012: (1) second-degree murder; (2) aggravated felony death by vehicle; (3) felony death by vehicle; (4) reckless driving; (5) driving while impaired ("DWI"); and (6) operating a motor vehicle while not having a driver's license. The case came on for trial 21 September 2015.

¶ 5        The central issue at trial was the identity of the driver of the vehicle at the time of the fatal wreck. Mr. Jacobs testified Defendant was driving. Defendant testified that Mr. Jacobs was driving and that he did not remember the crash. Mr. Carr served as the only other witness and testified that he saw Mr. Jacobs in the passenger seat and Mr. Hammonds in the backseat when Defendant came to speak with him in front of his house that night.

¶ 6        On 8 October 2015, the jury found Defendant guilty of second-degree murder, aggravated felony death by vehicle, DWI, reckless driving, and operating a motor vehicle without a valid operator's license. The trial court consolidated Defendant's second-degree murder and aggravated felony death by vehicle convictions into one judgment and sentenced Defendant to 180 to 228 months in prison. The trial court arrested judgment on Defendant's other charges. Defendant filed written notice of appeal.

¶ 7        With his appeal, Defendant also filed a motion for appropriate relief alleging that Mr. Carr had recanted his trial testimony as false. We granted Defendant's motion, vacated his convictions based on the motion, and ordered a new trial. As a result, we did not resolve Defendant's original appeal.

¶ 8        Our Supreme Court then reviewed and vacated the order of this Court, concluding the matter should be remanded to the trial court for an evidentiary hearing. We then remanded the motion to the trial court for that purpose.

¶ 9        The trial court conducted an evidentiary hearing on Defendant's motion for appropriate relief in three sessions over more than a year's time, on 7 June 2018, 7 February 2019, and 29 October 2019.

¶ 10        On 7 June 2018, Mr. Carr appeared and voluntarily testified that at Defendant's trial, he had falsely testified that: (1) he saw Mr. Jacobs and Mr. Hammonds on 5 July 2012; (2) he saw Mr. Jacobs sitting in the passenger side of the vehicle; and (3) he saw Mr. Hammonds sitting in the back seat on the driver's side. The trial court then advised Mr. Carr he was potentially facing criminal and contempt charges for perjury. After it became clear that Mr. Carr had not consulted with an attorney, the trial judge adjourned the hearing to allow Mr. Carr to obtain representation.

¶ 11        On 7 February 2019, Mr. Carr again appeared but invoked the Fifth Amendment to refuse to testify in response to virtually all of the trial prosecutor's

questions on cross-examination. The prosecutor objected to Mr. Carr asserting his privilege against self-incrimination after he testified on direct examination, so the trial court again adjourned the hearing to determine whether Mr. Carr had waived his right to assert his privilege.

¶ 12        On 29 October 2019, Mr. Carr did not appear. The trial court held that he had waived his privilege against self-incrimination by testifying on direct examination at the first hearing and struck his testimony in full because he had not appeared in court to answer questions on cross-examination.

¶ 13        On 14 May 2020, the trial court entered an order denying Defendant's motion for appropriate relief. Defendant filed a petition for writ of certiorari requesting our review of the order denying the motion for appropriate relief along with a motion to reinstate his original appeal. This Court ordered Defendant's appeal reinstated and granted his petition.

## II.    ANALYSIS

### A. *Merits of Defendant's Original Appeal*

¶ 14        Defendant asserts the trial court erred by failing to dismiss the charge of second-degree murder when Defendant moved to dismiss all charges at the close of all evidence at trial. Specifically, Defendant contends that the evidence, considered in the light most favorable to the State, was only sufficient to establish culpable negligence for a conviction of involuntary manslaughter and was insufficient to

establish malice, which is an essential element of second-degree murder. We

disagree.

¶ 15     Our standard of review on appeal is well-established:

> Upon the defendant's motion to dismiss, the question for
> the court is whether substantial evidence was introduced
> of each element of the offense charged and that the
> defendant was the perpetrator. Substantial evidence is
> such relevant evidence as a reasonable mind might accept
> as adequate to support a conclusion . . . . The court is to
> consider the evidence in the light most favorable to the
> State in ruling on a motion to dismiss. The State is entitled
> to every reasonable intendment and inference to be drawn
> from the evidence; contradictions and discrepancies do not
> warrant dismissal—they are for the jury to resolve.

*State v. Alston*, 310 N.C. 399, 404, 312 S.E.2d 470, 473 (1984) (quotation marks and

citation omitted).

¶ 16     Involuntary manslaughter is the "unlawful and unintentional killing of

another human being, *without malice*, which proximately results from . . . an act or

omission constituting culpable negligence." *State v. Wallace*, 309 N.C. 141, 145, 305

S.E.2d 548, 551 (1983) (emphasis added). Second-degree murder, on the other hand,

is "(1) the unlawful killing, (2) of another human being, (3) *with malice*, but (4)

without premeditation and deliberation." *State v. Banks*, 191 N.C. App. 743, 751, 664

S.E.2d 355, 361 (2008) (emphasis added). To prove malice for second-degree murder,

by reckless driving, in particular, the State does not need to demonstrate Defendant

had a specific intent to kill, but it must show "that [the] defendant had the intent to

perform the act of driving in such a reckless manner as reflects knowledge that injury or death would likely result, thus evidencing depravity of mind." *State v. Miller*, 142 N.C. App. 435, 441, 543 S.E.2d 201, 205 (2001) (citation omitted).

¶ 17        This Court has recognized that evidence of knowingly driving while impaired, whether by alcohol or an illegal substance—particularly when combined with evidence of reckless driving or behavior—may constitute sufficient evidence to prove malice for a second-degree murder charge. *See, e.g., State v. Grooms*, 230 N.C. App. 56, 67-68, 748 S.E.2d 162, 169-70 (2013) (holding substantial evidence of malice when the defendant knowingly consumed multiple impairing substances, swerved off the road prior to the collision, failed to brake, failed to call 911, did not aid the two victims he struck, and registered a 0.16 BAC at the time of the accident); *State v. Davis*, 197 N.C. App. 738, 743, 678 S.E.2d 385, 389 (2009), *aff'd in part, rev'd in part*, 364 N.C. 297, 698 S.E.2d 65 (2010) (holding sufficient evidence of malice where the defendant consumed nine to twelve beers in a two-hour period, ran over a road sign, weaved side to side until he ran off the road, crashed into the victim's truck without attempting to brake, and registered a 0.13 BAC).

¶ 18        Evidence introduced at trial, especially testimony by Mr. Jones, established that Defendant drove after consuming alcohol and *while* he consumed alcohol over the course of several hours and that he was impaired. At one point while driving, Defendant engaged the emergency break, locking the back tires and causing the car

to swerve. Defendant was driving at the time the vehicle veered off the road and crashed. Before the crash, Defendant fell asleep at the wheel as the car approached a bend in the road, drifted off the curve, suddenly woke, overcorrected, and crashed the vehicle.

¶ 19 Defendant's blood-alcohol level was 0.16 when police tested him after the crash, and an expert witness testified that based on the time lapse before testing, it could have been as high as 0.20 at the time of the crash. Similar to the defendants in *State v. Grooms*, 230 N.C. App. 56, 748 S.E.2d 162 (2013), and *State v. Davis*, 197 N.C. App. 738, 678 S.E.2d 385 (2009), Defendant knowingly consumed alcohol before and while driving beyond the point of impairment, drove recklessly, and had knowledge of the potentially fatal consequences of his driving, particularly in light of his history of impaired driving convictions.

¶ 20 Viewing the evidence in the light most favorable to the State, we hold the State presented substantial evidence of Defendant's malice, his "intent to perform the act of driving in such a reckless manner as reflect[ed] knowledge that injury or death would likely result," *Miller*, 142 N.C. App. at 441, 543 S.E.2d at 205, and the charge of second-degree murder was appropriately submitted to the jury for its consideration. We hold the trial court did not err in denying Defendant's motion to dismiss this charge.

### B. Order Denying Defendant's Motion for Appropriate Relief

¶ 21        Defendant claims that the trial court erred in denying Defendant's motion for appropriate relief because it struck a witness's testimony in whole without first issuing a material witness order compelling the witness to appear. This argument is without merit.

¶ 22        Defendant contends that this appeal is subject to *de novo* review, while the State argues abuse of discretion is the proper standard. The State is correct that, as a general matter, a denial of a motion for appropriate relief is subject to review for abuse of discretion. *State v. Watson*, 258 N.C. App. 347, 353-54, 812 S.E.2d 392, 397 (2018) (citing *State v. Elliot*, 360 N.C. 400, 419, 628 S.E.2d 735, 748 (2006)). However, we review the trial court's conclusions of law in an order denying a motion for appropriate relief *de novo*. *Id.* (citing *State v. Martin*, 244 N.C. App. 727, 734, 781 S.E.2d 339, 344 (2016)). If the issue raised by a defendant's challenge to the trial court's decision to deny his post-conviction motion is primarily legal rather than factual in nature, this Court uses a *de novo* standard of review in evaluating a defendant's challenge to the trial court's order. *Id.*

¶ 23        At an evidentiary hearing, the defendant "bears the burden of proving by a preponderance of the evidence every fact essential to support the motion." *State v. Garner*, 136 N.C. App. 1, 13, 523 S.E.2d 689, 698 (1990). The trial court may grant a defendant a new trial on the basis of recanted testimony if: "(1) the trial court is reasonably well satisfied that the testimony given by a material witness is false, and

(2) there is a reasonable possibility that, had the false testimony not been admitted, a different result would have been reached at the trial." *State v. Britt*, 320 N.C. 705, 715, 360 S.E.2d 660, 665 (1987), *superseded by statute on other grounds as stated in State v. Defoe*, 364 N.C. 29, 33, 691 S.E.2d 1, 4 (2010).

¶ 24        The Fifth Amendment of the United States Constitution and Article I, Section 23 of the North Carolina Constitution provide that a witness cannot be compelled to give self-incriminating evidence. U.S. Const. amend. V; N.C. Const., art. I, § 23. The Sixth Amendment of the United States Constitution and Article I, Section 23 of the North Carolina Constitution provide that a criminal defendant has the right to confront witnesses against him, which includes the right to test the truth of those witnesses' testimony by cross-examination. U.S. Const. amend. VI; N.C. Const., art. I, § 23; *see also State v. Ray*, 336 N.C. 463, 468, 444 S.E.2d 918, 922 (1994). When these rights conflict, "[t]he issue thus becomes whether [the] defendant's right to confront witnesses through cross-examination was unreasonably limited by [the witness's] assertion of the testimonial privilege." *Ray*, 336 N.C. at 469, 444 S.E.2d at 922.

¶ 25        In *State v. Ray*, 336 N.C. 463, 444 S.E.2d 918 (1994), our Supreme Court distinguished between cases where the "assertion of the privilege merely precludes inquiry into collateral matters which bear only on the credibility of the witness and those cases in which the assertion of the privilege prevents inquiry into matters about

which the witness testified on direct examination." *Id.* at 470, 444 S.E.2d at 923 (quoting *United States v. Cardillo*, 316 F.2d 606, 611 (2d Cir. 1963)). If the witness invokes the privilege in response to questions regarding collateral matters, there is little danger of prejudice to a defendant, but if the questions pertain to details of the direct examination, there may be a substantial danger of prejudice when a defendant is unable to confront the witness. *Id.* In the latter instance, "the witness's testimony should be stricken in whole or in part." *Id.* In other words, the essential question is "whether [the] defendant's inability to make the inquiry created a substantial danger of prejudice by depriving him of the ability to test the truth of the witness' direct testimony." *Id.* at 471, 444 S.E.2d at 924.

When the assertion of the privilege prevents inquiry into matters about which the witness testified on direct examination, to alleviate the substantial danger of prejudice, the trial court must either require the witness to answer the questions, or strike all or part of the witness's direct testimony after allowing the assertion of the testimonial privilege. *Id.* at 472, 444 S.E.2d at 924.

Defendant argues the trial court was not authorized to either compel the witness to answer questions or to strike the testimony after allowing the assertion of the privilege. Instead, Defendant contends, the trial court was required to first compel the witness to testify on cross-examination and only then, if the witness continued to refuse to answer questions, could the trial court strike the prior

testimony.  The trial court did not compel Mr. Carr to testify, and Mr. Carr never returned to hearings to learn he had waived his privilege.

¶ 28   The trial court determined that Mr. Carr was a material witness at Defendant's trial.  Mr. Carr voluntarily testified that his trial testimony was false without asserting his Fifth Amendment privilege.  After it became clear Mr. Carr had not consulted with an attorney regarding this testimony, the trial court set a second hearing date to allow Mr. Carr to seek counsel.  At the second hearing, Mr. Carr asserted his Fifth Amendment privilege on cross-examination.  Mr. Carr failed to return to testify for the third hearing date.  The trial court then found that Mr. Carr had waived his privilege by testifying during the first hearing and that his failure to reappear and undergo cross-examination substantially prejudiced the State's ability to present evidence and testimony in support of its position against Defendant's motion.  The trial court struck Mr. Carr's testimony that his trial testimony was false in its entirety.

¶ 29   We are bound by our Supreme Court's decision in *Ray*, which held that the trial court should *either* require the witness to answer the questions, *or* strike all or part of the witness's direct testimony after allowing the assertion of the testimonial privilege.  *Ray*, 336 N.C. at 472, 444 S.E.2d at 924.

¶ 30   "[W]hether all or a part of the testimony should be stricken, must depend upon the discretion of the trial judge exercised in the light of the particular circumstances."

*Cardillo*, 316 F.2d at 613. Defendant has not suggested the trial court should have only partially stricken Mr. Carr's testimony or challenged the trial court's exercise of its discretion in this regard, so he has abandoned that argument. *See* N.C. R. App. P. 28(a) (2022) ("The scope of review on appeal is limited to issues so presented in the several briefs. Issues not presented and discussed in a party's brief are deemed abandoned.").

Other than Mr. Carr's testimony, Defendant presented no evidence to support his motion for appropriate relief. Because Defendant failed to meet his burden of proof, *Garner*, 136 N.C. App. at 13, 523 S.E.2d at 698, we hold the trial court properly denied his motion for appropriate relief and affirm the trial court's order.

### III. CONCLUSION

For the reasons set forth above, we hold Defendant's trial was free from error, and we affirm the trial court's denial of Defendant's motion for appropriate relief.

NO ERROR; AFFIRMED.

Judges ARROWOOD and HAMPSON concur.